# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 13-130 |
| | ) | |
| JESSE ALMENDAREZ, | ) | |
| | ) | |
| Defendant | ) | |

## Opinion and Order

On November 13, 2014, we entered an Order finding by a preponderance of the evidence that the Defendant, Jesse Almendarez, was then presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he was unable to assist properly in his defense. Accordingly, we ordered that Mr. Almendarez, who was housed at the Allegheny County Jail, be committed to the custody of the United States Attorney General to be hospitalized for treatment in a suitable facility for a reasonable period, not to exceed four months, as would be necessary to determine whether there was a substantial probability that in the foreseeable future he would attain the capacity to permit the trial to proceed. Mr. Almendarez was never transported to a medical facility and remains at the Allegheny County Jail.

On April 16, 2015, we held a status conference initiated at the request of the government regarding the fact that the Defendant had not been transported, and to address what affect this had on Speedy Trial Act calculations, 18 U.S.C. §§ 3161, *et seq*. In anticipation of the conference we issued tentative findings of fact and rulings of law in response to the government's request to toll the Speedy Trial clock in which we tentatively found that pursuant

to 18 U.S.C. § 3161(h)(4) the defendant has been and remains under an excludable period of delay due to the fact that he is mentally incompetent to stand trial.

At the conference the government requested that we issue a second Order committing the Defendant to the custody of the Attorney General to be transported to a suitable facility so that he could receive necessary treatment. In part, the government cited the fact that at a minimum Mr. Almendarez could begin to receive treatment while the parties and the Court determine outstanding legal issues. We agree with the government and will contemporaneously enter a renewed Order to commit Mr. Almendarez to the custody of the Attorney General for treatment.

Defense counsel requested time to file a pleading addressing the government's motion, which we granted. On April 20, 2015, counsel for Mr. Almendarez filed a Motion to Dismiss Indictment in which he argues that there is a Speedy Trial Act violation and requests that the Indictment be dismissed with prejudice. ECF No. 65. The government filed its own anticipatory brief addressing defense counsel's potential arguments to dismiss on Speedy Trial grounds. ECF No. 64. The government also filed a Supplemental Brief, ECF No. 66, to which defense counsel filed a Reply, ECF No. 67. We now issue the following Opinion and Order, which supersedes our tentative findings of fact and rulings of law of April 15, 2015.

I. **Background**

On May 7, 2013, a grand jury returned an indictment charging Jesse Almendarez with one count of threatening a Federal Officer in violation of 18 U.S.C. § 115(a)(1)(B), and one count of interstate threat in violation of 18 U.S.C. § 875(c). Mr. Almendarez made his initial appearance on May 9, 2013. He was arraigned and entered a plea of not guilty on May 13, 2013. An order extending the time for filing pretrial motions to June 28, 2013, was entered on May 13, 2013.

On June 28, 2013, Marketa Sims, Esquire, a federal public defender, filed a motion to extend the time for filing pretrial motions to August 27, 2013. This motion was granted on July 1, 2013. Thereafter, defense counsel filed four successive additional motions, all of which were granted; these motions extended the time for filing pretrial motions to April 28, 2014.

On March 19, 2014, we held a status conference, initiated by motion of the government, to assess whether a competency evaluation was needed in this case. At the time, the Court had received correspondence from Mr. Almendarez indicating the possibility of delusional thought. In addition, the pleadings indicated that Mr. Almendarez has been diagnosed with schizoaffective disorder and schizophrenia, paranoid type, that he has been under psychiatric care from time to time, and that he does not always take his prescribed medications. Mr. Almendarez was present at the status conference, appeared to comprehend his circumstances, and responded appropriately. In addition, defense counsel vigorously argued that her client was competent and represented to the court that a plea agreement between the parties had been reached. Thus we did not order a competency evaluation at that time.

We subsequently learned from defense counsel that Mr. Almendarez had decided not to enter into a plea agreement and on April 28, 2014, his counsel filed substantive pretrial motions, to which the government filed responses. One of Mr. Almendarez's motions raised the issue of whether he was competent to waive certain rights during various interviews conducted by law enforcement agents during the investigation of this case. In response, the government filed a motion for a competency hearing. Defense counsel opposed the motion, but argued that if a competency hearing was scheduled that Defendant be evaluated locally.

On May 28, 2014, we granted the government's motion for a competency evaluation over the objection of defense counsel, in part, because it seemed evident that in an evidentiary hearing to address the issues raised in Mr. Almendarez's pretrial motions we would be making an assessment and judgment as to whether he was suffering from a mental impairment such that he was unable to understand his constitutional, civil, and privacy rights. In addition, we had continued to receive numerous letters from Mr. Almendarez indicating delusional thought at odds with the reality of the present proceedings. We did, however, acquiesce to defense counsel's request that the competency evaluation be performed locally at the Allegheny County Jail by a local doctor in order to reduce any delay in the proceedings. The Order was entered on June 4, 2014. The evaluation was conducted and a report was issued dated July 17, 2014.

On July 28, 2014, successor defense counsel, Jay Finkelstein, Esquire, also a federal public defender, entered his appearance for Mr. Almendarez, and on August 8, 2014, he understandably sought an additional 60 days, to October 10, 2014, to respond and proceed to a competency hearing. We set the competency hearing for November 13, 2014. After the hearing, on November 13, 2014, we entered the Order finding that Mr. Almendarez was mentally incompetent to the extent that he was unable to assist properly in his defense, and committing him to the custody of the Attorney General to be hospitalized for treatment in a suitable facility. As noted, Mr. Almendarez has not been transported for treatment.

**II. Discussion**

As we stated in our tentative findings of fact and rulings law we initially laid fault for the error with the Court. The Court failed to deliver a copy of this Order to the United States Marshal Service, which is responsible for transporting Mr. Almendarez to a suitable Bureau of Prisons facility for treatment. We also placed partial blame with defense counsel, who never

informed the Court during the five months that Mr. Almendarez sat in the Allegheny County Jail that his client had not been transported to a suitable facility for treatment.

By implication defense counsel absolves himself of any blame for the unfortunate delay his client has undergone by pointing out that "[i]t was not the responsibility of the undersigned to make certain that Mr. Almendarez was transported to the custody of the Attorney general in [order] to ensure his timely prosecution." D. Motion 12 n.2. It is difficult to read this passage and not suspect that defense counsel is implying that because he had no statutory obligation regarding the movement of his client under the Speedy Trial Act or the statute regarding mental competency, that it was sound strategy not to inform the court or the government that his client had not been transported (or a fortuitous lack of communication with his client) with the end result being that the clock has run out.

That being said defense counsel is correct that the government must take its share of the fault in this case. Since our Order committed the Defendant to the custody of the Attorney General, the attorney for the government is also responsible for ensuring that the government is aware of that defendant. Accordingly, counsel for the government could have, but did not, take steps to ensure that the Order was delivered to the United States Marshal Service.

In our tentative findings of fact and rulings of law we surmised that defense counsel would seek to dismiss the indictment based on a violation of the Speedy Trial Act relying, in part, on United States v. Lewis, 484 F.Supp.2d 380 (W.D. Pa. 2007). Defense counsel informed us at the conference that in fact he intends to rely on United States v. Zhu, Cr. No. 2002-00159, Mem. Order (W.D. Pa. Jan 28, 2004), in which, on similar facts, the indictment was dismissed with prejudice based on a violation for the Speedy Trial Act. Nonetheless the arguments raised by defense counsel appear to be what we thought they would be: addressing the interplay

5

between unreasonable transportation delays under section 3161(h)(1)(F) of the Speedy Trial Act, and incompetence to stand trial under section 3161(h)(4) of the Speedy Trial Act.

One line of cases concludes that if the defendant was found to be incompetent to stand trial, then section 3161(h)(4) trumps section 3161(h)(1)(F). See <u>United Sates v. Hatter</u>, 2015 WL 1511015, *3 (S.D. Cal. Mar. 19, 2015) ("In the court's view, the delay in bringing [defendant] to trial is the result of mental incompetence and § 3161(h)(4) applies to his case. Clerical errors and unavailable bedspace for treatment may have delayed restorative treatment but they are not the cause of [defendant's] incompetence."); <u>see</u> <u>also</u> <u>United States v. Vasquez</u>, 918 F.2d. 329 (2d Cir. 1990). "On the other hand, some courts have concluded that an unreasonable transportation delay is not excludable, even if the defendant already was found mentally incompetent to stand trial." <u>United States v. Dellinger</u>, 980 F.Supp.2d 806, 812 (E.D. Mich. 2013); <u>see</u> <u>also</u> <u>United States v. Noone</u>, 913 F.2d. 20 (1st Cir. 1990).

### *Effect of Pretrial Motions*

An additional factor to consider under the Speedy Trial Act is the fact that Mr. Almendarez has filed substantive pretrial motions and the government has filed responses to said motions. The filing of his pretrial motions independently stopped the Speedy Trial Act clock, and the competency evaluation and hearings have simply delayed our consideration of the motions. Defense counsel reasonably concludes that much of the delay occurring after pretrial motions were filed is not the "result" of the filing of the pretrial motions, but rather is the result of our finding that Mr. Almendarez is incompetent to proceed. D. Motion 6. However, we cannot ignore that pretrial motions were filed that raise substantial issues that require an evidentiary hearing. As defense counsel is well aware the content of the pretrial motions formed part of the basis that convinced the Court to Order a mental evaluation for Mr. Almendarez.

There will always be overlap in such situations, but we do not think we can easily reject the fact that there are outstanding pretrial motions filed by Defendant that need to be resolved. While a defendant is awaiting a mental evaluation or competency hearing, or is awaiting or undergoing restorative treatment, we necessarily are not considering any pretrial motions. But neither the pretrial motions, nor the Speedy Trial Act subsection excluding the time for consideration of such motions, disappears from consideration entirely. If a defendant is never restored to competency the statute provides the procedures for the parties to follow. If, however, a defendant is restored to competency, and we find that he is competent to stand trial, the next order of business would be a pretrial motions hearing and the Speedy Trial Clock would be stopped while this process unfolds. There is no dispute that the Speedy Trial Act clock stopped as of April 28, 2014, as a result of the filing of defendant's pretrial motions. 18 U.S.C. § 3161(h)(1)(D).

The government's motion for a competency hearing on May 12, 2014, also worked to stop the clock. Defense counsel concedes that the time period from May 12, 2014, through November 13, 2014, is excluded. D. Motion 4-5. Defense counsel's argument is that the time period from November 13, 2014, through the date of their motion to dismiss is not excludable time under section 3161(h)(4). We agree that the issue concerning the Speedy Trial calculations since November 13, 2014 must be analyzed under section 3161(h)(4), and the filing of substantive pretrial motions under section 3161(h)(1)(D) will not work to independently exclude the time period since Mr. Almendarez was found to be incompetent.

*Time Periods under Section 4241(d) and Section 3161(h)(4)*

Our consideration of this matter has highlighted the fact that different time periods are set forth in two different statutes when the issue of a defendant's competency is raised. The statute

7

concerning determination of mental competency provides that a Defendant who is deemed to be incompetent is to be sent for potential restorative treatment "for such a reasonable period, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." 18 U.S.C. § 4241(d). The Speedy Trial Act sets the exclusionary time for an incompetent defendant and provides that any period of delay resulting from the Court's determination that defendant is mentally incompetent to stand trial shall be excluded in speedy trial computations. 18 U.S.C. § 3161(h)(4).

In the past we have conflated these two separate time periods so that our commitment order typically would set the time to be excluded for speedy trial purposes to have an end date four months from our commitment Order. As a practical matter this makes sense, but it is clear that the two statutory time periods have different purposes. Section 4241(d) sets an initial reasonable time period for restorative treatment at four months and has nothing to say about the Speedy Trial Act clock. Section 3161(h)(4) has everything to say about the Speedy Trial Act clock, and is clear that "[a]ny period of delay" is to be excluded. When a defendant is found incompetent to stand trial it makes sense that Congress intended to exclude from Speedy Trial Act calculations the time while that defendant is incompetent.

### *Transportation Delays and Excluded Time under Section 3161(h)(1)(F)*

The Speedy Trial Act also includes another subsection specifically applicable to computation of time related to the transportation of a defendant. Section 3161(h)(1)(F) provides that delays in excess of ten days "resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, … from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination"

8

are presumed unreasonable and therefore not excluded from the Speedy Trial clock. 18 U.S.C. § 3161(h)(1)(F). It is doubtful that when Congress enacted the above provisions it considered a situation where an incompetent Defendant is not transported at all. In this case it is not entirely accurate to say that there was a "delay resulting from transportation" of the Defendant as there was no transportation attempted in this case. 18 U.S.C. § 3161(h)(1)(F). Likewise, there was no delay due to bureaucracy on the part of the Bureau of Prisons or the U.S. Marshal's Service, and there was no delay due to the unavailability of a transportation method or bedspace at a medical facility.

Analyzing a transportation delay of 40 days to transport a defendant who was ordered to undergo a competency evaluation, the First Circuit Court of Appeals in Noone, held that only ten days would be considered excluded from Speedy Trial calculations, and the remaining thirty days of transport time was considered to be presumptively unreasonable. Noone, 913 F.2d. at 25-26. The Court held that because the government could not rebut the presumptive unreasonableness of the delay, the Speedy Trial clock was ticking for 30 days of the time it took to transport defendant. Id. at 26.

In Lewis, Judge Sean McLaughlin reviewed the two lines of cases represented by Vasquez and Noone. As Defense counsel points out Judge McLaughlin "identified the weaknesses of the Second Circuit's holding in Vasquez, observing that "'[u]nder Vasquez, it would seem that any transportation delays arising in the context of mental competency determinations [] are automatically excludable irrespective of the length or circumstances of the delay in question.'" D. Motion 9, quoting Lewis, 484 F. Supp. 2d at 386. Judge McLaughlin went on to explain that such an interpretation of the transportation exclusion of 3161(h)(1)(F) would render the section "virtually meaningless, since it could never have any real effect in the

context of a pending motion to determine physical or mental competency – the very situations where 'examinations or hospitalizations' would seem most likely to arise." Lewis, 480 F.Supp. 2d at 386. In contrast, the Lewis Court viewed that holding in Noone as "consistent with the guidelines to the Speedy Trial Act which expressly recognize that [§ 3161(h)(1)(F)] may serve to reduce the amount of excludable time that would otherwise be available under § 3161(h)(1)(A)." Id.

### *Transportation and Excludable Time under Section 3161(h)(4)*

Significantly, Judge McLaughlin's consideration of Vasquez and Noone revolved around the interplay between section 3161(h)(1)(A) (regarding delay from proceedings to *determine* mental competency) and 3161(h)(1)(F) (regarding delay resulting from transportation of a defendant subject to a mental competency proceeding). Both subsections (A) and (F) fall under section 3161(h)(1), and it appears that Judge McLaughlin's analysis was confined to the interplay between these two subsections. However, Judge McLaughlin disagreed with the defendant's positon that "transportation delays in excess of 10 days … *always* run against the Speedy Trial clock, and § 3161(h)(1)[(F)] will thus always trump subsections (h)(1)(A) and/or (h)(4) as a matter of law, irrespective of the circumstances involved in the competency proceedings." Id. at 387. Thus, Judge McLaughlin did not adopt the view that transportation delays beyond 10 days are always unreasonable.

Relevant to section 3161(h)(4), which is at issue in the present case, Judge McLaughlin noted that the defendant in Lewis "was declared incompetent on May 26, 2006 and arrived at his designated medical facility for treatment on June 22." Id. at 390. "Defendant was not otherwise available for trial during the period from May 26 to June 22 *due to his state of incompetency*." Id. (emphasis added). Judge McLaughlin then concluded that "to the extent there was

10

unreasonable delay in transporting Defendant to [the medical facility] the delay was also *independently attributable to his state of incompetency* and that time is thereby fully excludable under § 3161(h)(4)." Id. at 390-391 (emphasis added). He similarly found that "the time during which Defendant was returned from [the medical facility] to this Court is fully excludable." Id. at 391. Judge McLaughlin further found that "as far as this Court is concerned, Defendant was considered incompetent to stand trial—and *all intervening delay was excludable under § 3161(h)(4)*" from the time the Court declared him incompetent to the time the Court had set for a competency hearing after defendant had been restored. Id. at 391(emphasis added). We take the same position.

There is a critical distinction between a case in which a defendant has been found incompetent and cases "concern[ing] defendants who have not yet been found incompetent, meaning that § 3161(h)(4) does not yet apply." Hatter, 2015 WL 1511015, *4. As explained by the Hatter Court:

> The interaction between § 3161(h)(1)(F) and (h)(1)(A) is different from (h)(1)(F)'s interaction with (h)(4) because (F) and (A) are in the same subsection (1), under the umbrella of "proceedings." Section 3161(h)(4), on the other hand, is separate and not a subset of "proceedings[,]" suggesting that § 3161(h)(4) has a much larger scope. Therefore, the Court finds the entire time of a defendant's incompetency excluded from the speedy trial clock per § 3161(h)(4), regardless of whether § 3161(h)(1)(F) applies to delays in transporting defendants to competency evaluations.

Hatter, 2015 WL 1511015, at *4. To the extent that there is no reasonableness limitation contained in section 3161(h)(4), "the Supreme Court has found that there is a constitutional limitation that applies" and questions of due process violations may arise. Hatter, 2015 WL 1511015, at *5, citing Jackson v. Indiana, 406 U.S. 715, 731 (1972). We agree with this analysis.

11

We therefore find that the Speedy Trial Act clock stopped on November 13, 2014, and remains stopped for the period of time that Mr. Almendarez remains under our Order finding that he is mentally incompetent to stand trial. Accordingly, although the errors by all involved have delayed restorative treatment, they are not the cause of Mr. Almendarez's incompetence, and therefore we conclude that they have not caused the Speedy Trial Act to be violated. Hatter, 2015 WL 1511015 at *3.

We have had numerous proceedings in which we have had to resolve motions to determine the mental competency of the defendant, with a variety of delays and a variety of outcomes. See, e.g. United States v. Herring, Cr. No. 13-40[1]; United States v. Keyes, Cr. Nos. 12-04 & 12-05[2]; United States v. Saunders Cr. No. 07-294[3]; United States v. Miller, Cr. No. 05-39[4]; United States v. Muhammad, Cr. No. 05-35[5]; United States v. Grape, Cr. No. 05-33[6]; and

---

[1] United States v. Herring, Cr. No. 13-40 (defendant evaluated and found competent with no transportation delay).
[2] United States v. Keyes, Cr. Nos. 12-04 & 12-05 (competency exam ordered, defendant found not competent and ordered for a period of restoration on September 5, 2012, defendant not received at medical center until November 15, 2012. Defendant eventually found competent on May 6, 2013).
[3] United States v. Saunders Cr. No. 07-294 (competency exam ordered on August 11, 2008, delays prompted renewed Orders in January 2009, and again in April 2009. Defendant found competent on July 1, 2009).
[4] United States v. Miller, Cr. No. 05-39E (psychiatric exam of defendant ordered on March 14, 2006, transportation delays to a suitable facility as late as May 15, 2006. Defendant ultimately found not guilty only by reason of insanity).
[5] United States v. Muhammad, Cr. No. 05-35 (defendant ordered to undergo evaluation; found not competent over defendant's vigorous objections. Defendant sent for a period of restoration after which he was restored and found competent to proceed to trial).
[6] United States v. Grape, Cr. No. 05-33 (perhaps the most troubling case. Overall the defendant was sent for numerous evaluations to four different medical facilities with the first Order being issued in September 2005. Delay due to no available bedspace until November 2, 2005. Because the reports were inconclusive we ordered a second evaluation in February 2006, and again there was delay in finding a facility. Again we had an inconclusive report, however we held a hearing and found defendant not competent and sent him for a period of restoration. Our Order was dated July 20, 2006, but defendant was not delivered to the medical center until September 7, 2006. During the period of restoration, defendant refused to take his medications against the advice of his doctors. We held a hearing pursuant to Sell v. United States, 539 U.S. 166 (2003), after which we allowed the Bureau of Prisons ("BOP") to forcibly medicate defendant. While an interim appeal was pending, the BOP determined that defendant had become a danger to himself or others thereby allowing forcible medication, but when confronted with this fact the defendant voluntarily took the medication and improved dramatically. He was returned to the County Jail and promptly ceased taking his medication and decompensated, again becoming incompetent to stand trial. Again he refused medication and again the government sought to involuntarily medicate him. We denied this second request to forcibly medicate defendant. Defendant has never been restored to competency and remains at a federal medical center).

United States v. Jackman, Cr. No. 00-72[7]. Whenever there is an issue of the mental capacity pf an accused criminal defendant we not only rely on the relevant statutes that provide the procedures we must follow, but also on the representations of counsel, the United States Marshal Service which arranges for and transports the defendant, the Bureau of Prisons which must find a suitable and available space for the defendant, and ultimately the medical staff which evaluates the defendant and provides a report to the Court. The intersection of criminal justice and mental health is at best a fragile system. Our experience shows that we must depend on the efforts of all involved in order to ensure that the case is resolved as timely as possible in light of the need for mental health evaluations and treatment. Unfortunately delays do occur and in this case because of the delays we must arrive at a legal conclusion regarding the Speedy Trial Act computations under the governing statutes.

To summarize, based on our understanding of the progress of this case four days are counted against the speedy trial clock from the time of Mr. Almendarez's initial appearance on May 9, 2013, until he filed his motion to extend the time for filing pretrial motions on May 13, 2013. Pretrial motions were filed by Mr. Almendarez on April 28, 2014. Although the government has filed a Response, we have been unable to set up a hearing on the motions due to the competency proceedings. The events outlined above show that no further time was counted against the speedy trial clock up to November 13, 2014, the date we entered our Order finding Mr. Almendarez incompetent to stand trial. We find that the Speedy Trial clock then remained stopped as our Order explicitly excluded from speedy trial calculations the time from the entering of the Order on November 13, 2014, until March 13, 2015, given the need for a period

---

[7] United States v. Jackman, Cr. No. 00-72 (defense counsel sought mental evaluation over objection of defendant, we ordered defendant to undergo evaluation, but allowed new counsel to represent defendant for competency hearing and permitted him to have his own evaluation performed. Both evaluations were performed locally and after hearing in which both doctors testified we found defendant competent).

of restoration. As set forth above, despite the fact that we set an end date of March 13, 2015, pursuant to 18 U.S.C. § 3161(h)(4) the defendant has been and remains under an excludable period of delay due to the fact that he is mentally incompetent to stand trial.

Accordingly, the following Order is hereby entered.

And now, this 27th day of April, 2015, it is hereby ORDERED that the government's Motion to toll the Speedy Trial Act clock is granted insofar as it is consistent with this Opinion.

An Order recommitting the Defendant to the custody of the Attorney General shall be entered forthwith.

Maurice B. Cohill, Jr.
Senior United States District Court Judge