IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 13-130 |
| | ) | |
| JESSE ALMENDAREZ, | ) | |
| | ) | |
| Defendant | ) | |

### Order Regarding Sell Hearing

We have scheduled a hearing to determine whether to involuntarily treat the Defendant, Jesse Almendarez, with psychotropic medications for March 3, 2016. The request to involuntarily medicate Mr. Almendarez came from the medical professionals evaluating him at the Federal Medical Center in Butner, North Carolina. We issue this preliminary Order to set out the relevant legal standards pursuant to Sell v. United States, 539 U.S. 166 (2003). Nothing in this Order should be taken as a ruling by the Court.

**I.     Background**

On May 7, 2013, a grand jury returned an indictment charging Jesse Almendarez with one count of threatening a Federal Officer in violation of 18 U.S.C. § 115(a)(1)(B), and one count of interstate threat in violation of 18 U.S.C. § 875(c).

On March 19, 2014, we held a status conference, initiated by motion of the government, to assess whether a competency evaluation was needed in this case. At the time, the Court had received correspondence from Mr. Almendarez indicating the possibility of delusional thought. In addition, the pleadings indicated that Mr. Almendarez has been diagnosed with schizoaffective disorder and schizophrenia, paranoid type, that he has been under psychiatric

care from time to time, and that he does not always take his prescribed medications. Mr. Almendarez was present at the status conference, appeared to comprehend his circumstances, and responded appropriately. In addition, defense counsel vigorously argued that her client was competent and represented to the court that a plea agreement between the parties had been reached. Thus we did not order a competency evaluation at that time.

We subsequently learned from defense counsel that Mr. Almendarez had decided not to enter into a plea agreement and on April 28, 2014, his counsel filed substantive pretrial motions, to which the government filed responses. One of Mr. Almendarez's motions raised the issue of whether he was competent to waive certain rights during various interviews conducted by law enforcement agents during the investigation of this case. In response, the government filed a motion for a competency hearing.

On May 28, 2014, we granted the government's motion for a competency evaluation over the objection of defense counsel, in part, because it seemed evident that in an evidentiary hearing to address the issues raised in Mr. Almendarez's pretrial motions we would be making an assessment and judgment as to whether he was suffering from a mental impairment such that he was unable to understand his constitutional, civil, and privacy rights. In addition, we had continued to receive numerous letters from Mr. Almendarez indicating delusional thought at odds with the reality of the present proceedings. Thus, we ordered that Mr. Almendarez undergo a competency evaluation.

Mr. Almendarez was evaluated locally by Dr. Robert Wettstein, who issued a Competency Report dated July 16, 2014. On November 13, 2014, we entered an Order finding by a preponderance of the evidence that the Defendant, Jesse Almendarez, was then presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that

he was unable to assist properly in his defense. Accordingly, we ordered that Mr. Almendarez be committed to the custody of the United States Attorney General to be hospitalized for treatment in a suitable facility as would be necessary to determine whether there was a substantial probability that in the foreseeable future he would attain the capacity to permit the trial to proceed. Mr. Almendarez is currently being treated at the Federal Medical Center in Butner, North Carolina.

While receiving treatment Mr. Almendarez's primary evaluator at the Medical Center, Dr. Robert Cochrane, issued two Status Reports to the Court, dated July 1, 2015 and August 20, 2015. In both reports Dr. Cochrane indicated that Mr. Almendarez was incompetent to proceed to trial and that he continued to refused the medical staff's recommendation to be treated with antipsychotic medication.

On August 26, 2015, a comprehensive Forensic Evaluation was issued by Dr. Cochrane, as well as the Medical Center's Psychiatrist, Dr. Bryon Herbel. This Report states that Mr. Almendarez currently remains not competent to proceed to trial, continues to refuse medication, and concludes that without antipsychotic medication "there is no reason to believe that Mr. Almendarez will become competent to stand trial in the foreseeable future." Forensic Report, at 7. These circumstances have therefore prompted the medical evaluators' to request that the Court, following a hearing, permit them to involuntarily medicate Mr. Almendarez.

**II.     Legal Standards**

The primary issue for the Court is whether the defendant should be administered psychiatric medications against his will pursuant to Sell v. United States, 539 U.S. 166 (2003). By refusing the recommended medical treatment, Mr. Almendarez has raised issues of a Constitutional nature. The Supreme Court has recognized that an individual has a

constitutionally protected Fifth and Fourteenth Amendment liberty interest in avoiding the unwanted administration of antipsychotic drugs that can only be overcome by an 'essential' or 'overriding' state interest.  Riggins v. Nevada, 504 U.S. 127, 134 (1992), Washington v. Harper, 494 U.S. 210, 221 (1990).

A more precise description of the issue is whether Mr. Almendarez should be involuntarily medicated "in order to render [him] competent to stand trial;" that is, it can only be done "solely for trial competence purposes in certain instances."  Sell, 539 U.S. at 179 & 180.  Similarly, we are authorized to commit a defendant "for an additional reasonable period of time . . . if the court finds that there is a substantial probability that within such additional period of time *he will attain the capacity to permit the trial to proceed*."  18 U.S.C. § 4241(d)(2) (emphasis added).  We raise this point in order to emphasize that the evidence at the Sell hearing has to be sufficient to convince the Court that by involuntarily medicating Mr. Almendarez there is a substantial probability that he will attain the capacity to permit the trial to proceed.

There are four factors a court must find before determining that involuntary medication to restore competency is warranted:  (1) that important governmental interests are at stake; (2) that involuntary medication will significantly further the important governmental interests; that is, the court must find that involuntary medication is substantially likely to render the defendant competent to stand trial;  (3) that involuntary medication is necessary to further the important governmental interests; that is, the court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results; and (4) administration of the drugs is medically appropriate; that is, that the treatment is in the patient's best medical interest in light of his medical condition.  Sell, 539 U.S. at 180-181.

Before turning to the above factors, however, the first item for the Court to examine is whether "forced medication is warranted for a *different* purpose," such as the defendant being a danger to himself or others, or for the defendant's own safety or the safety of others. Sell, 539 U.S. at 181-182, 179 (quoting Riggins, 504 U.S. at 135). The information given to the Court preliminarily shows that Mr. Almendarez does not meet the conditions for being involuntarily medicated for a different purpose since the Forensic Evaluation indicates that Mr. Almendarez has not engaged in behaviors that pose a high risk of danger to himself or others.

We note that the Supreme Court stated that even if alternative grounds for forced medication are not found, by first conducting an inquiry into alternative grounds, it "will help to inform expert opinion and judicial decisionmaking in respect to a request to administer drugs for trial competence purposes." Sell, 539 U.S. at 183. The Court continued, explaining that this inquiry will "facilitate direct medical and legal focus" upon the following questions: "Why is it medically appropriate forcibly to administer antipsychotic drugs to an individual who (1) is *not* dangerous *and* (2) *is* competent to make up his own mind about treatment? Can bringing such an individual to trial *alone* justify in whole (or at least in significant part) administration of a drug that may have adverse side effects, including side effects that may to some extent impair a defense at trial?" Sell, 539 U.S. at 183 (emphasis in original).

In light of the Harper and Riggins cases, the Supreme Court in Sell stated:

> These two cases, Harper and Riggins, indicate that the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests. This standard will permit involuntary administration of drugs solely for trial competence purposes in certain instances. But those instances may be rare.

Sell, 539 U.S. at 179-180. Assuming that forced medication on other grounds is not warranted, a court must then consider whether the government has established that the above-mentioned four factors have been met. Sell, 539 U.S. at 183. The Supreme Court set forth the relevant standard by explaining tin more detail the four Sell factors that must be found, as follows:

> **First**, a court must find that important governmental interests are at stake. The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In both instances the Government seeks to protect through application of the criminal law the basic human need for security. See Riggins, supra, 504 U.S. 127 at 135-136, 118 L Ed 2d 479, 112 S Ct 1810
>
> Courts, however, must consider the facts of the individual case in evaluating the Government's interest in prosecution. Special circumstances may lessen the importance of that interest. The defendant's failure to take drugs voluntarily, for example, may mean lengthy confinement in an institution for the mentally ill--and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime. We do not mean to suggest that civil commitment is a substitute for a criminal trial. The Government has a substantial interest in timely prosecution. And it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost. The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution. The same is true of the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed, see 18 U.S.C. § 3585(b) [18 USCS § 3585(b)]). Moreover, the Government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one.
>
> **Second**, the court must conclude that involuntary medication will significantly further those concomitant state interests. It must find that administration of the drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair. . . . .
>
> **Third**, the court must conclude that involuntary medication is necessary to further those interests. The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. . . . And the court must consider less intrusive means for administering the drugs, *e.g.*, a court order to the defendant backed by the contempt power, before considering more intrusive methods.

> **Fourth**, as we have said, the court must conclude that administration of the drugs is medically appropriate, *i.e.*, in the patient's best medical interest in light of his medical condition. The specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success.

Sell, 539 U.S. at 180-181 (emphasis in bold added).

### III. Conclusion

The government bears the burden in a Sell hearing and thus will be expected to present its evidence first. The Supreme Court has not stated what the burden of proof is in a Sell hearing. In a previous case we have decided that because important Constitutional interests are at stake in a Sell hearing it was appropriate to apply the clear and convincing standard, and the United States Court of Appeals for the Third Circuit agreed. United States v. Grape, 549 F.3d 591, 598 (3d Cir. 2008) ("all courts of appeals addressing this issue have held that the Government bears the burden of proof on factual questions by clear and convincing evidence"); see also United States v. Cruz, 757 F.3d 372, 381-82 (3d Cir. 2014) cert. denied, 135 S. Ct. 1015 (2015).

With regard to the first factor, although the government always retains the ultimate burden to prove the government's "important interest," the defendant has the initial burden to establish that "special circumstances" exist that may lessen the importance of the government's interest. Cruz, 757 F.3d at 382 (adopting burden-shifting standard set forth in United States v. Mikulich, 732 F.3d 692, 699 (6th Cir.2013) ("While the ultimate burden of proving an important interest ... remains with the Government, ... the defendant [must] demonstrate that the special circumstances of his case undermine the Government's interest....")).

As the Supreme Court explained, special circumstances "affect[], but do[] not totally undermine, the strength of the need for prosecution." Sell, 539 U.S. at 180 (discussing potential future confinement and length of time already served). In Cruz, the United States Court of

Appeals for the Third Circuit summarized the balancing a court must do under the first <u>Sell</u> factor as follows:

> A court's conclusions regarding the importance of the government's interest necessarily involve balancing the seriousness of the crimes at issue with case-specific "[s]pecial circumstances" that "may lessen the importance of that interest." [<u>Sell</u>, 39 U.S. at 180]. Examples of special circumstances include "the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed[ ) ]" and the likelihood, given "[t]he defendant's failure to take drugs voluntarily," that he will face "lengthy confinement in an institution for the mentally ill ... that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." <u>Id.</u>

<u>Cruz</u>, 757 F.3d at 381.

With regard to the special circumstance of the defendant having already been confined for a length of time for which he would receive credit, it appears that Mr. Almendarez has been in custody since May 9, 2013, or approximately 33 months. The Probation Office has preliminarily calculated that Mr. Almendarez's base offense level would be 12. Added to the base offense level are a total of 8 levels resulting in a total offense level of 20. If Mr. Almendarez was restored to competency and pleaded guilty, he would receive up to a 3-level credit for acceptance of responsibility resulting in a total offense level of 17.

Mr. Almendarez's criminal history category is preliminarily determined to be I. Thus, Mr. Almendarez potentially faces an offense level of 20 and a criminal history category of I, which equates to imprisonment of 33 to 41 months (assuming a conviction after trial and no acceptance of responsibility reduction). With a guilty plea, the offense level would be a 17, and the term of imprisonment would be 24 to 30 months.

Finally, we note that in the April 26th Forensic Report, the medical evaluators have set out their summary of a Proposed Treatment Plan for Mr. Almendarez. The Plan is set forth in light of the factors explained in the Supreme Court's <u>Sell</u> opinion, but the medical evaluators were careful to note that their opinions and plan were based on medical criteria, not legal criteria.

The Court will receive evidence and testimony at the time set for the hearing.

SO ORDERED, this 2nd day of March, 2016.

Maurice B. Cohill, Jr.
Senior United States District Court Judge