# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | Case No. 13-130 |
| | ) | |
| JESSE ALMENDAREZ, | ) | |
| | ) | |
| Defendant | ) | |

## OPINION and ORDER on INVOLUNTARY MEDICATION

This matter comes before the Court for consideration of the request of the government by way of the United States Federal Medical Center in Butner, North Carolina for permission to involuntarily medicate the defendant to restore him to competency in order to stand trial. The Court conducted a hearing on March 3, 2016, pursuant to Sell v. United States, 539 U.S. 166 (2003), to determine whether to permit involuntarily treatment of the Defendant, Jesse Almendarez, with psychotropic medications. For the reasons stated below we will deny the request.

**I.    Background**

On May 7, 2013, a grand jury returned an indictment charging Jesse Almendarez with one count of threatening a Federal Officer in violation of 18 U.S.C. § 115(a)(1)(B), and one count of interstate threat in violation of 18 U.S.C. § 875(c).

On March 19, 2014, we held a status conference, initiated by motion of the government, to assess whether a competency evaluation was needed in this case. Prior to the status conference, the Court had received correspondence from Mr. Almendarez, who is represented by counsel, indicating the possibility of delusional thought. In addition, the pleadings indicated that Mr. Almendarez has been diagnosed with schizoaffective disorder and schizophrenia, paranoid type, that he had been under psychiatric care from time to time, and that he does not always take

his prescribed medications. Mr. Almendarez was present at the status conference, appeared to comprehend his circumstances, and responded appropriately to questions. In addition, defense counsel vigorously argued that her client was competent and represented to the court that a plea agreement between the parties had been reached. Thus we did not order a competency evaluation at that time.

We subsequently learned from defense counsel that Mr. Almendarez had decided to reject a plea agreement and on April 28, 2014, his counsel filed substantive pretrial motions, to which the government filed responses. One of Mr. Almendarez's motions raised the issue of whether he was competent to waive certain rights during various interviews conducted by law enforcement agents during the investigation of this case. In response, the government filed a motion for a competency hearing.

On May 28, 2014, we granted the government's motion and ordered a competency evaluation over the objection of defense counsel, in part, because it seemed evident that in an evidentiary hearing to address the issues raised in Mr. Almendarez's pretrial motions we would be making an assessment and judgment as to whether he was competent to understand and/or waive his constitutional, civil, and privacy rights. In addition, we had continued to receive numerous letters from Mr. Almendarez indicating delusional thought at odds with the reality of the present proceedings. Thus, we ordered that Mr. Almendarez undergo a competency evaluation.

Mr. Almendarez was evaluated locally by Robert Wettstein, M.D., who issued a Competency Report dated July 16, 2014. Dr. Wettstein diagnosed Mr. Almendarez with Schizoaffective disorder, bipolar type; alternatively, chronic undifferentiated schizophrenia; a seizure disorder, and GERD. He described his mental condition as being "a severe mental

disorder of psychotic proportions which is chronic in duration." Wettstein Rep. 11. Dr. Wettstein concluded that Mr. Almendarez was able to understand the nature and consequences of the proceedings against him, despite his chronic psychosis, but that he is unable to assist properly in his defense due to his schizoaffective disorder. Dr. Wettstein opined that Mr. Almendarez "is in need of psychiatric treatment including psychotropic medication to improve his thinking, reduce his thought disorder, stabilize his mood, and improve his judgment." Wettstein Rep. 12. He further stated, "It is of interest that his delusional thinking appears to be chronic and may or may not be mood dependent so that his delusions might be fixed in duration even if psychotropic medication is appropriately prescribed and taken. His multiple psychiatric hospitalizations often occurred after he had discontinued his mood stabilizing, antipsychotic medications, so that it is likely that such medication is essential to his mood stability and cognition. Wettstein Rep. 12-13.

On November 13, 2014, we held a competency hearing and entered an Order finding by a preponderance of the evidence that the Defendant, Jesse Almendarez, was then presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he was unable to assist properly in his defense. Accordingly, we ordered that Mr. Almendarez be committed to the custody of the United States Attorney General to be hospitalized for treatment in a suitable facility to determine whether there was a substantial probability that in the foreseeable future he would attain the capacity to permit the trial to proceed. Mr. Almendarez is currently being treated at the Federal Medical Center in Butner, North Carolina.

While receiving treatment Mr. Almendarez's primary evaluator at the Medical Center, Robert Cochrane, M.D., issued two Status Reports to the Court, dated July 1, 2015 and August 20, 2015. In both reports Dr. Cochrane indicated that Mr. Almendarez was incompetent to

3

proceed to trial and that he continued to refuse the medical staff's recommendation to be treated with antipsychotic medication.

On August 26, 2015, a comprehensive Forensic Evaluation was issued by Dr. Cochrane and the Medical Center's psychiatrist, Bryon Herbel, M.D. FMC Butner Forensic Eval, 8/26/15. Mr. Almendarez was diagnosed with Schizoaffective Disorder, Bipolar Type, Multiple Episodes, Currently in Acute Episode. FMC Butner Forensic Eval. 6. The doctors further explained that "Mr. Almendarez appears to have been suffering from this illness since approximately 1998 and his primary symptoms have included disorganized speech and thought processes, persecutory and grandiose delusions, irritable and unstable mood, and impaired judgment." FMC Butner Forensic Eval. 6. Doctors Cochrane and Herbel concluded, as did Dr. Wettstein, that while Mr. Almendarez has a basic understanding of the nature and consequences of the proceedings against him, he is unable to assist his attorney and is therefore not competent to stand trial. FMC Butner Forensic Eval. 6. In addition, the doctors noted that he continues to refuse medication, and therefore they concluded that without antipsychotic medication "there is no reason to believe that Mr. Almendarez will become competent to stand trial in the foreseeable future." FMC Butner Forensic Eval. 6-7.

These circumstances have therefore prompted the medical evaluators to request that the Court permit them to medicate Mr. Almendarez involuntarily. Accordingly, Doctors Cochrane and Herbel included a Proposed Treatment Plan and Analysis of the issues in light of the factors explained in the Supreme Court's <u>Sell</u> opinion (noting that the opinions and plan were based on medical criteria, not legal criteria). FMC Butner Forensic Eval. 7-24. Modifications to the proposed treatment plan were introduced into evidence at the March 3, 2016 hearing by Dr. Herbel to include an additional medication choice, which, because it is a preferred choice of Mr.

Almendarez would be the first recommended oral medication.  Ex. SH-2, Email dated 2/25/2016.  The second modification concerns recommendations as to the order of use of long-acting injections of risperdone and haloperidol.  Email, 2/25/2016, Ex. SH-2.

Mr. Almendarez was also independently examined by a psychiatrist, Moira Artigues, M.D., retained by the Defense.  Dr. Artigues issued a Forensic Psychiatric Evaluation dated February 24, 2016, in which she diagnosed Mr. Almendarez with Schizoaffective Disorder, Bipolar Type.  Dr. Artigues also concluded that although Mr. Almendarez is able to understand the nature of proceedings against him he is unable to assist his attorney in his defense and is therefore not competent to stand trial.  Artigues Forensic Psych. Eval. 4.  Dr. Artigues noted that Doctors Cochrane and Herbel made a compelling case for involuntary treatment, but she also offered her opinion that there are compelling reasons why involuntary treatment may not be a good option in this case.  Artigues Forensic Psych. Eval. 6.

At the March 3, 2016 Sell hearing Mr. Almendarez and his counsel, Assistant Federal Public Defender Jay Finkelstein, appeared via videoconference from the Federal Medical Center in Butner.  The attorney for the government, Assistant United States Attorney Shardul appeared in person in Pittsburgh, Pennsylvania.  Testifying via videoconference from the same room in Butner as Mr. Almendarez and his counsel were Dr. Cochrane, Dr. Herbel, and Dr. Antigues, all of whom were testifying as experts.  Finally, United States Marshal Jason Byham testified from Pittsburgh regarding the United States Marshal's health monitoring capabilities and protocols when transporting prisoners.

**II.     Legal Standards**

The primary issue for the Court is whether the defendant should be administered psychiatric medications against his will pursuant to Sell v. United States, 539 U.S. 166 (2003).

5

By refusing the recommended medical treatment, Mr. Almendarez is asserting his constitutionally protected Fifth and Fourteenth Amendment liberty interest in remaining free from unwanted medical treatment. The United States Supreme Court has recognized that an individual has a constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs that can only be overcome by an "essential" or "overriding" state interest. Riggins v. Nevada, 504 U.S. 127, 134 (1992), Washington v. Harper, 494 U.S. 210, 221 (1990). "The issue before the Court is whether the government's interest in prosecution sufficiently outweighs the defendant's rights to reject medical treatment to warrant the issuance of … an order" permitting involuntary treatment. United States v Austin, 606 F.Supp.2d 149, 149 (D.D.C. 2009).

There are four factors that a court must find before determining that involuntary medication to restore competency is warranted: (1) that important governmental interests are at stake; (2) that involuntary medication will significantly further the important governmental interests; that is, the court must find that involuntary medication is substantially likely to render the defendant competent to stand trial; (3) that involuntary medication is necessary to further the important governmental interests; that is, the court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results; and (4) administration of the drugs is medically appropriate; that is, that the treatment is in the patient's best medical interest in light of his medical condition. Sell, 539 U.S. at 180-181.

Before turning to the above factors, however, the first item for the Court to examine is whether "forced medication is warranted for a *different* purpose," such as the defendant being a danger to himself or others, or for the defendant's own safety or the safety of others. Sell, 539 U.S. at 181-182, 179 (quoting Riggins, 504 U.S. at 135). The information given to the Court

6

before the hearing, and confirmed by evidence during the hearing, shows that Mr. Almendarez does not meet the conditions for being involuntarily medicated for a different purpose since he has not engaged in behaviors that pose a high risk of danger to himself or others while in the confined setting.

Since forced medication on other grounds is not warranted, we must then consider whether the government has established that the above-mentioned four factors have been met. Sell, 539 U.S. at 183. The Supreme Court set forth the relevant standard by explaining in more detail the four Sell factors that must be found to justify an order permitting involuntary medication of a defendant, as follows:

> **First**, a court must find that important governmental interests are at stake. The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In both instances the Government seeks to protect through application of the criminal law the basic human need for security. See Riggins, supra, 504 U.S. 127 at 135-136, 118 L Ed 2d 479, 112 S Ct 1810
>
> Courts, however, must consider the facts of the individual case in evaluating the Government's interest in prosecution. Special circumstances may lessen the importance of that interest. The defendant's failure to take drugs voluntarily, for example, may mean lengthy confinement in an institution for the mentally ill--and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime. We do not mean to suggest that civil commitment is a substitute for a criminal trial. The Government has a substantial interest in timely prosecution. And it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost. The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution. The same is true of the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed, see 18 U.S.C. § 3585(b) [18 USCS § 3585(b)]). Moreover, the Government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one.
>
> **Second**, the court must conclude that involuntary medication will significantly further those concomitant state interests. It must find that administration of the drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that administration of the drugs is substantially

unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair. . . . .

**Third**, the court must conclude that involuntary medication is necessary to further those interests. The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. . . . And the court must consider less intrusive means for administering the drugs, *e.g.*, a court order to the defendant backed by the contempt power, before considering more intrusive methods.

**Fourth**, as we have said, the court must conclude that administration of the drugs is medically appropriate, *i.e.*, in the patient's best medical interest in light of his medical condition. The specific kinds of drugs at issue may matter here as elsewhere. Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success.

Sell, 539 U.S. at 180-181 (emphasis in bold added).

### III. Discussion

The Supreme Court has not stated what the burden of proof is in a Sell hearing, however, because important Constitutional interests are at stake in a Sell hearing it is appropriate to apply the clear and convincing standard. United States v. Grape, 549 F.3d 591, 598 (3d Cir. 2008) ("all courts of appeals addressing this issue have held that the Government bears the burden of proof on factual questions by clear and convincing evidence"); see also United States v. Cruz, 757 F.3d 372, 381-82 (3d Cir. 2014) cert. denied, 135 S. Ct. 1015 (2015). Both sides have filed Briefs, and the Defendant has filed a short Reply to the government's Brief.

### A. Important Governmental Interests

The first factor is whether important governmental interests are at stake here. The Sell case instructs that the "Government's interest in bringing to trial an individual accused of a serious crime is important." Sell, 539 U.S. at 180. The instant offenses of threatening a Federal Officer in violation of 18 U.S.C. § 115(a)(1)(B), and interstate threat in violation of 18 U.S.C. § 875(c) are serious crimes. As set forth in the Indictment, Count One states in part:

>On or about December 27, 2012, in the Western District of Pennsylvania, the defendant, JESSE J. ALMENDAREZ, did threaten to assault and murder Special Agent Christopher Watson and Special Agent Bill Steen, Federal law enforcement officers, with intent to impede, intimidate, interfere with and retaliate against Special Agent Christopher Watson and Special Agent Bill Steen while they were engaged in or on account of the performance of their official duties.

Count Two, states, in part, as follows:

>On or about December 27, 2012, in the Western District of Pennsylvania, the defendant, JESSE J. ALMENDAREZ, did knowingly and willfully transmit in interstate commerce a communication containing a threat to injure the person of another, that is the defendant, JESSE J. ALMENDAREZ, wrote that he would kill Special Agent Christopher Watson and Special Agent Bill Steen on the Department of Veterans Affairs' online messaging system.

The government's interest in prosecuting those who threaten to assault and murder Federal law enforcement officers is high. It is clear that the offenses charged against Mr. Almendarez are serious and that the government's interest in prosecuting him is important.

Our inquiry does not end here however. The Supreme Court also instructs us further to consider "the facts of the individual case" because "[s]pecial circumstances may lessen the importance" of the government's interest. Sell, 539 U.S. at 180. While the government retains the ultimate burden to prove its "important interest," the defendant has the burden to establish that "special circumstances" exist that may lessen the importance of the government's interest. Cruz, 757 F.3d at 382 (adopting burden-shifting standard set forth in United States v. Mikulich, 732 F.3d 692, 699 (6th Cir.2013) ("While the ultimate burden of proving an important interest ... remains with the Government, ... the defendant [must] demonstrate that the special circumstances of his case undermine the Government's interest....")).

As the Supreme Court explained, special circumstances "affect[], but do[] not totally undermine, the strength of the need for prosecution." Sell, 539 U.S. at 180 (discussing potential future confinement and length of time already served). In Cruz, the United States Court of

Appeals for the Third Circuit summarized the balancing a court must do under the first Sell factor as follows:

> A court's conclusions regarding the importance of the government's interest necessarily involve balancing the seriousness of the crimes at issue with case-specific "[s]pecial circumstances" that "may lessen the importance of that interest." [Sell, 39 U.S. at 180]. Examples of special circumstances include "the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed[ ) ]" and the likelihood, given "[t]he defendant's failure to take drugs voluntarily," that he will face "lengthy confinement in an institution for the mentally ill ... that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." Id.

Cruz, 757 F.3d at 381.

Looking at the likelihood of lengthy confinement in an institution for the mentally ill, we note that if Mr. Almendarez's right not to be involuntarily medicated is upheld, and he is not able to be restored to competency, then he will be subject to section 4241(d) of Title 18 of the United States Code. Furthermore, pursuant to section 4241(d), if "it is determined that [Mr. Almendarez's] mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of section 4246." 18 U.S.C. § 4241(d). Section 4246 concerns the hospitalization of a person due for release but who is still suffering from a mental disease or defect, and also applies to those defendants who have not been restored to competency as set forth in 4241(d). For our present purposes, the significance of section 4246 is its provision for a hearing to determine "whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person . . . ." 18 U.S.C. § 4246(a). No such hearing has been held, but we note that Mr. Almendarez would not simply be released if he is not able to be restored to competency, he must undergo further evaluation. We have no evidence to convince us at this time that Mr. Almendarez would be considered a danger to others as none was presented at the Sell hearing.

We therefore do not find that this special circumstance undermines the government's interest in prosecution.

Turning to the amount of time already served, we find that this special circumstance weighs in favor of Mr. Almendarez. The statutory maximum sentence under Count One for a violation of 18 U.S.C. § 115(a)(1)(B) is 10 years. See 18 U.S.C. § 115(b)(4) (the maximum sentence for a threatened *assault* is 6 years, but here the Defendant is charged with threatening to assault *and murder*). The maximum sentence under Count Two for a violation of 18 U.S.C. § 875(c) is 5 years. The advisory guideline sentence range in this case is likely to be 33 to 41 months' imprisonment, assuming a conviction after trial and no reduction for acceptance of responsibility. If Mr. Almendarez pleaded guilty the advisory guideline imprisonment range would likely be 24 to 30 months. Mr. Almendarez has already been confined since May 9, 2013, or nearly 35 months.

Considering that in the best case scenario, with little or no complications, Mr. Almendarez would be restored to competency no sooner than 2 to 4 months (although 2 months may well be overly optimistic). There is an outstanding pretrial suppression motion which would require a hearing, as well as typical pretrial preparation, making a realistic date for trial no sooner than mid to late Summer.

As noted, such a timeline appears highly unlikely. It is our opinion that a more realistic "best case" scenario would result in the case being ready for trial no sooner than October or November 2016. Thus under these two "best case" scenarios, by the time trial begins, Mr. Almendarez will have already been confined for a minimum of 40 to 43 months, not to mention the cost to the government. However, were a "best case" scenario not to play out in reality, it would likely add 12 months more of confinement before trial begins. Factoring in the necessary

11

time for preparation of a Presentence Report and sentencing hearing would mean that Mr. Almendarez's confinement will exceed any likely sentence he would receive, which we conclude severely undermines the government's interest in prosecution.

As to this consideration, the government argues that when examining time served for which Mr. Almendarez would receive credit we must also consider other important factors. The government argues that a conviction in this case may result in Mr. Almendarez realizing the need to take his medication and to cease issuing threats. Additionally, the government points out that Mr. Almendarez would likely be placed on a term of supervised release, which would provide oversight of his conduct and would likely minimize repeat criminal conduct. In addition, supervision would also mean that any potentially criminal conduct would be more quickly and effectively discovered. Probation Officers would also be able to provide tools and opportunities to assist Mr. Almendarez. The government further notes that with a felony conviction Mr. Almendarez would not be permitted to possess a firearm, and a conviction would ensure he would not pass a background check to obtain a firearm.

The government's argument is not truly an argument against the special circumstances favoring defendant, as much as it is additional support in favor of showing that important governmental interests are at stake here. That important governmental interests are at stake is not in dispute, however, the Supreme Court specifically set out "special circumstances" that could potentially undermine the government's interest in prosecution. We agree with the government that important governmental interests are at stake here, and we also conclude that special circumstances exist that severely undermine that interest.

It is our conclusion therefore that the amount of time already served by Mr. Almendarez, for which he would receive credit for time served, outweighs the government's interest in

prosecution, and thus we will uphold Mr. Almendarez's constitutional right not to be forcibly medicated and deny the request for involuntary medication. Put another way, this is not one of the "rare instances" where the government's interest in prosecution outweighs the defendant's liberty interest in remaining free from unwanted medical treatment. Sell, 539 U.S. at 180.

## B. Will Involuntary Medication Further the Governmental Interests

Although our finding on the first Sell factor dictates the result, we nevertheless consider the remaining factors for completeness. Under the second factor we consider whether administration of the drugs is substantially likely to render Mr. Almendarez competent to stand trial. Sell, 539 U.S. at 180. "At the same time, [we] must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." Sell, 539 U.S. at 181.

As noted, all four doctors concluded that Mr. Almendarez is not competent to stand trial as a result of his diagnosis of Schizoaffective Disorder, Bipolar type, because of his inability to be able to assist counsel in his defense. All four doctors also agree that the preferred treatment in this case is antipsychotic medication.

Evidence was introduced through the testimony of Doctors Cochrane and Herbel, as well as in the Forensic Evaluation, regarding the outcomes of treating incompetent defendants. The studies cited in the Evaluation show that, in general, involuntary medication successfully restores a defendant to competency at success rates ranging from 76% to 82%.

The Treatment Plan set forth in the Forensic Evaluation states that Mr. Almendarez would be presented with a Court Order authorizing involuntary treatment. The treating psychiatrist then would attempt to gain his voluntary cooperation to take an oral medication. As

is clear from the testimony and evidence, crucial to using second generation medications is the Defendant's voluntary agreement to take the medication. If Mr. Almendarez would voluntarily cooperate initially, he would be monitored for approximately 8 weeks at a therapeutic dose. This would require that he also submit to laboratory testing to ensure that he is being compliant and for other monitoring purposes.

If Mr. Almendarez refused to comply voluntarily with the oral medication treatment plan, then long-acting injections would be initiated. This process would likely require Mr. Almendarez to submit to hand restraints for administration of the injections. If he refused to submit to hand restraints then physical force would be used to administer the injection.

Mr. Almendarez has been treated with antipsychotic medication in the past. The evidence indicates that although most of his treatment periods have been relatively short-term he has benefited from the medications and has not suffered serious adverse effects. The proposed treatment plan for Mr. Almendarez is first to attempt to gain his voluntary cooperation to take Seroquel in oral form. This is a medication that Mr. Almendarez prefers and has taken in the past with apparent benefit.

If he refuses to take Seroquel, or if long acting injections of medication are otherwise needed, the next step is to encourage Mr. Almendarez to take an oral dose of risperdone prior to beginning treatment with long-acting injections of risperdone. Risperdone is the preferred long-acting injectable medication, but since Mr. Almendarez has never taken this medication before, an oral test dose is necessary. If he refuses the risperdone treatment, then the next course of action would be to treat him involuntarily with long-acting injections of haloperidol.

As for potential side effects, Seroquel appears to be the medication with the least potential for negative side-effects. In addition, Mr. Almendarez has been treated with Seroquel

14

with no record of serious negative side effects. Mr. Almendarez has not been treated with risperdone in the past and thus it is uncertain what side effects he would experience. However, we note that risperdone is a second generation medication, which has a reduced risk of incident of involuntary movement. Finally, haloperidol is a first generation drug and thus has the potential for more serious negative side effects. Mr. Almendarez has been treated with haloperidol for a short time period and there is no indication that he suffered serious negative side effects.

The administration of the recommended antipsychotic medications appears to be the usual course of treatment for patients with psychotic disorders like Mr. Almendarez. All doctors who have examined him agree on the basics of the recommended treatment. The medical staff will be in a far greater position to assess Mr. Almendarez once they are able to evaluate his response to medication, but we do have evidence to show that he is likely to have a positive response.

Because the Court is not qualified to render a medical opinion we must rely on the medical experts' opinions that there is a substantial likelihood, estimated to be between 76% and 82%, that Mr. Almendarez will be restored to competency. We must trust that had the Doctors believed that Mr. Almendarez's likelihood of success was much less than the studies they have relied upon, they would have so stated. That being said, the testimony also is clear that no one is able to predict whether Mr. Almendarez will in fact be restored to competency under the proposed treatment plan. This is not unusual when treating mentally incompetent persons. We are mindful that the "question of whether the Defendant can be rendered competent cannot be answered with conviction." United States v. Schloming, 2006 WL 1320078, *7 (D.N.J. 2006).

Balancing out the fact that Mr. Almendarez has been successfully treated with antipsychotic medications in the past is evidence to show that Mr. Almendarez may be a more difficult patient to treat and therefore may not respond successfully to the medication. Part of the evidence before the Court is Mr. Almendarez's frequent relapses due to discontinuing his antipsychotic meditations against medical advice. In addition, Dr. Wettstein noted that his "delusional thinking appears to be chronic and may or may not be mood dependent so that his delusion might be fixed in duration *even if psychotropic medication is appropriately prescribed and taken*." Wettstein Rep. 12-13 (emphasis added). Dr. Wettstein's opinion along with other evidence of record indicates the possibility that Mr. Almendarez may in fact not be restored to competency even if the treatment plan is successfully implemented, and also that Mr. Almendarez is at a high risk for decompensating at some time prior to a trial or other hearing, which would require further hospitalization, further delay, and would also increase his time in confinement for which he would receive credit.

Reviewing all the testimony and evidence regarding this factor we find that whether there is a substantial likelihood that the administration of medication will render Mr. Almendarez competent to stand trial weighs in favor of the government. We find by clear and convincing evidence that it is substantially likely that Mr. Almendarez would be restored to competency and that it is substantially unlikely that he would suffer side effects that would interfere significantly with his ability to assist counsel in conducting a trial defense.

### C. Is Involuntary Medication Necessary, or are there Alternative, Less Intrusive Treatments

The third factor requires us to consider whether any alternative, less intrusive treatments are unlikely to achieve substantially the same results. There is no evidence to suggest that any alternative less intrusive means exist to achieve substantially the same results in this case. Sell,

16

539 U.S. at 181. While it is possible that alternative treatments would be beneficial for Mr. Almendarez, and we note that he has already shown a cooperative attitude in other aspects of his treatment, his specific and adamant refusal to participate in antipsychotic medication treatment has thus far been a barrier to achieving restoration to competency and we have no evidence to convince us that alternative treatments to the proposed plan as set out by the medical experts would be successful. We therefore find that less intrusive means are not available to the Court.

### D. Medical Appropriateness of Treatment

Finally, we must conclude that administration of the drugs is medically appropriate, *i.e.*, in the patient's best medical interest in light of his medical condition. Sell, 539 U.S. at 181. Here again, we need not go into detail as there is no dispute that the recommended treatment is medically appropriate.

### IV. Conclusion

After careful consideration of the evidence we find that the government has not met its burden under the Sell analysis. The determining factor in our decision is the special circumstances that the Defendant's time in confinement will without a doubt exceed the maximum sentence he would receive if he went to trial and was convicted. Our decision is also made with the Supreme Court's admonition that an order permitting forced medication is warranted only in limited circumstances. We therefore deny the government's request to permit involuntary administration of antipsychotic medication.

In light of our ruling, we will order that the government file a status update no later than fourteen days from the date of this Order to apprise the Court of how it intends to proceed now that its request has been denied.

In the meantime, Mr. Almendarez's commitment to the Federal Medical Center at Butner will be continued pursuant to 4241(d) for a period not to exceed June 15, 2016. The Medical Center shall file a report with the Court and counsel indicating Mr. Almendarez's progress as to restoration of competency and any other matters the medical staff believes relevant to the instant case. The medical staff and the government should also inform the Court as soon as it is known if proceedings pursuant to 18 U.S.C. § 4246 are necessary.

Accordingly, the following Order is hereby entered.

**IT IS HEREBY ORDERED** that the government's request to involuntarily medicate the Defendant is **DENIED**.

**IT IS FURTHER ORDERED** that the Government shall file a status update no later than fourteen days from the date of this Order.

**IT IS FURTHER ORDERED** that Defendant's commitment to the Federal Medical Center at Butner will be continued pursuant to 18 U.S.C. § 4241(d) for a period not to exceed June 15, 2016, and that any delay as a result of the competency proceedings, the need for the Sell hearing, and the follow-up commitment for treatment shall be excluded under 18 U.S.C. § 3161(h)(4).

The Medical Center staff shall determine whether there is a substantial probability that in the foreseeable future the Defendant will attain the capacity to permit the trial to proceed. If it is determined that the Defendant's mental condition has not so improved as to permit proceedings to go forward, the Defendant is subject to the provisions of sections 18 U.S.C. § 4246.

Date: April 13, 2016

Maurice B. Cohill, Jr.
Senior United States District Court Judge